**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Justin C. Marshall, | : | |
| Plaintiff, | : | Case No. 1:26-cv-118 |
| v. | : | Judge Susan J. Dlott |
| Anthony J. Huspaska, *et al.*, | : | **Order Granting Motion to Dismiss for Lack of Standing** |
| Defendants. | : | |

This matter is before the Court on the Motion to Dismiss filed by Defendants Anthony J. Huspaska, Stenger & Senger, P.C. ("Stenger"), and Absolute Resolutions Investments, LLC ("ARI"). (Doc. 10.) Plaintiff Justin C. Marshall filed a Response in Opposition (Doc. 14), and Defendants filed a Reply. (Doc. 15.) For the reasons that follow, the Court will **GRANT** the Motion (Doc. 10) and **DISMISS WITHOUT PREDJUICE** this action for lack of standing.

## I. BACKGROUND[1]

Marshall asserts that on April 9, 2024, ARI filed a Complaint against him in a debt-collection action in Hamilton County, Ohio. (Doc. 1 at PageID 6.) ARI's counsel, Huspaska, who is with the law firm Stenger, signed the Complaint. (*Id.*) Marshall retained an attorney on May 9, 2024, who entered an appearance in the case. (*Id.*) On July 22, 2024, the case was transferred to the Hamilton County Court of Common Pleas and docketed as case number A2403270. (*Id.*)

In January 2026, Marshall received a "Notice of Court Proceeding to Collect Debt (R.C. § 2716.02) from Defendants with reference to the same case, A2403270, for which Marshall had

[1] Well-pleaded allegations are accepted as true for purposes of a motion to dismiss. *DIRECTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).

retained an attorney. (*Id.* at PageID 8.) The communication was sent to Marshall directly and stated:

> THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

(*Id.* at PageID 9.) The communication stated that "we will . . . ask that your employer be ordered to withhold money from your earnings" and that "the extra burden on your employer possibly could cause you to lose your job." (*Id.*)

On February 3, 2026, Marshall filed the instant lawsuit against Huspaska, Stenger, and ARI alleging: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 for sending a communication to him rather than his attorney; and (2) civil conspiracy. (*Id.* at PageID 10–17.) Plaintiff also seeks punitive damages. (*Id.* at PageID 17.) On April 3, 2026, Defendants filed a Motion to Dismiss (Doc. 10) arguing that service of a "Notice of Court Proceeding to Collect Debt" was not a violation of the FDCPA and that the Court lacks subject matter jurisdiction. Plaintiff responded in opposition, and Defendants replied. (Docs. 14, 15.) The matter is now ripe.

## II. STANDARD OF REVIEW

Defendants move to dismiss under both Rule 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim. Because jurisdictional issues precede consideration of the merits, the Court will begin—and conclude—its analysis with jurisdiction and whether Plaintiff has standing to bring suit.

Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). Rule 12(b)(1) authorizes a dismissal of a complaint where the Court lacks jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of establishing the Court's jurisdiction when such a dismissal motion is filed under Rule 12(b)(1). *Lyshe*, 854 F.3d at 857. The Court can "look beyond the jurisdictional allegations in the complaint and consider submitted evidence." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012). Finally, the Court can resolve factual disputes without converting a Rule 12(b)(1) motion to a motion for summary judgment. *Rogers v. Stratton Industs., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Dismissal under Rule 12(b)(1) is without prejudice. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

## III. LAW AND ANALYSIS

Because standing is a threshold issue, the Court will first address whether Plaintiff has alleged a concrete injury in fact from the alleged violation of the FDCPA. Plaintiff alleges that as a result of the alleged violation of 15 U.S.C. § 1692c(a)(2), requiring that communications about his debt be sent to his attorney, he suffered the harm of increased risks of personal bankruptcy and losing his job. (Doc. 1 at PageID 15.) Defendants argue that this alleged harm is speculative and not concrete or particularized so as to establish injury sufficient to confer standing. The Court agrees.

15 U.S.C. § 1692k(a)(1) creates civil liability for a "debt collector who fails to comply with any provision of this subchapter with respect to any person…[for] any actual damage

sustained by such person as a result of such failure." 15 U.S.C. § 1692k(a)(1). Plaintiff asserts that Defendants violated 15 U.S.C. § 1692c(a)(2), because Defendants sent a "Notice of Court Proceeding to Collect Debt" ("Garnishment Notice"), a statutorily prescribed notice under Ohio law, directly to Plaintiff despite knowledge that he was represented by an attorney. Pursuant to 15 U.S.C. § 1692c(a)(2):

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt:
>
> * * *
>
> 2) If the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer[.]

15 U.S.C. § 1692c(a)(2) (emphasis added). Defendants argue that even if Plaintiff establishes a statutory violation, he lacks standing because his alleged injury as a result of the notice being sent to his attorney, and not to him, resulted in only speculative future harm. [2] The Court agrees.

To confer standing under Article III of the Constitution, the plaintiff bears the burden of meeting the "irreducible constitutional minimum" of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

---

[2] Defendants raise the merits arguments that the Garnishment Notice was not a prohibited communication, and it was authorized by a court of competent jurisdiction. Because standing is dispositive, the Court will not address these issues.

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560–561). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Id.* At the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To demonstrate injury, "a plaintiff must show that that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TQC), Inc.*, 528 U.S. 167, 180–81 (2000)). "[I]n a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk to future harm itself causes a *separate* concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021) (emphasis in original).

The Sixth Circuit has reflected that that the above line of standing cases "emphasize a basic guidepost in our standing analysis[,]" which is that a plaintiff "does not automatically have standing simply because Congress authorizes a plaintiff to sue a debt collector for failing to comply with the FDCPA." *Ward v. Nat'l Patient Acc. Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021) (citing *Spokeo*). Rather, a plaintiff must show either that the procedural harm itself is a concrete injury or that the procedural violations caused an independent concrete injury. *Id.* In *Ward*, the Court held that the plaintiff failed to show more than a bare procedural violation of the FDCPA and thus did not have standing to bring his claims. *Id.* at 363.

The Honorable Doughlas R. Cole recently found that a plaintiff alleging an FDCPA violation lacked standing because he alleged no concrete harm accompanying the alleged FDCPA violations alleged in the complaint. *Crawford v. Law Offices of Brett Borland*, No. 1:23-cv-191, 2024 WL 187825, at *4 (S.D. Ohio Jan. 12, 2024). In *Crawford*, the plaintiff alleged that a law firm and two employees engaged in improper debt collection practices by notifying him that he owed money and failing to respond, which caused him injuries of defamation of character, emotional distress, and damage to his creditworthiness. *Id*. at *1. But, just as here, the court found that the plaintiff could not show a concrete and particularized past injury or imminent future injury. *Id*. at *3. The plaintiff failed to allege any concrete harm accompanying his alleged FDCPA violation, such as that a third party viewed his debt information, that it was reported to a credit agency, that his credit score suffered, or that he was denied credit based on the allegations of his complaint. *Id*. at *4. The plaintiff's allegations of suffering "defamation" were not supported by any facts demonstrating that the defendants actually communicated with any third parties about their debt collection efforts or caused inaccurate information to be added to the plaintiff's credit report or otherwise harmed his credit score. *Id*. And the plaintiff's allegations of emotional distress were conclusory and insufficient to confer standing. *Id*. at *5. The court summarized tht "between the types of injuries [the plaintiff] alleges and the vagueness with which he pleads them, he has not shown that he has standing under Article III." *Id*.

Plaintiff's allegations in this case suffer from the same deficits as did the plaintiff's allegations in *Crawford*. Here, Plaintiff alleges that his injuries are increased risks of both job

loss and bankruptcy. He alleges no facts supporting those speculative concerns to demonstrate concrete harm. In sum, just as in *Crawford*, Plaintiff has not alleged injury that is concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical.

Further, even if Plaintiff could establish the first element of standing, he must prove that the conduct is "fairly traceable" to the injury and complained of conduct by the Defendants. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020). Plaintiff cannot establish this necessary standing element, either. In *Buchholz*, the Sixth Circuit Court of Appeals found that the plaintiff failed to plead a fairly traceable connection in an FDCPA action between his purported injury (anxiety he would be subject to legal action if payment was not made) and the alleged violation stemming from letters he received, as the plaintiff did not dispute the debts or allege the letters contained inaccuracies. *Id*. at 867. Although the court expressed skepticism that anxiety would qualify as a cognizable injury, it found that the anxiety alleged was not fairly traceable to "anyone but [the plaintiff]" as he did not dispute owning the debt and feared the consequences of his own delinquency. *Id*. Here, Plaintiff has not demonstrated how potential perceived increase risks of job loss or bankruptcy are fairly traceable to Defendants' sending a Garnishment Notice as opposed to his own failure to pay his debts. For this reason, too, Plaintiff cannot establish Article III standing.

Plaintiff does not acknowledge or cite any applicable Sixth Circuit cases on standing. Plaintiff argues instead that interference with the attorney-client relationship is a substantive harm under the FDCPA and is "recognized by numerous courts." (Doc. 14 at PageID 51.) The cases Plaintiff cites are referenced in incomplete citation format, but none support the position

that he has standing in this action.[3] For instance, Plaintiff cites "*Ojogwu*, Case No. 19-CV-0563, VLEX-888756673." (*Id.*) The Court located the presumed case, *Ojogwu v. Rodenburg Law Firm*, No. 19-cv-563, 2019 WL 6130450 (D. Minn. Nov. 19, 2019). In that case, the district court denied a motion to dismiss an FDCPA claim. *Id.* at *1. In subsequent procedural history, the plaintiff's motion for summary judgment was denied, *see* 2020 WL 4548282 (D. Minn. Aug 6, 2020), but that decision was vacated and remanded to the district court by the Eight Circuit Court of Appeals, *see* 26 F.4th 457 (8th Cir. 2022). The district court case cited by Plaintiff does not discuss standing. Nonetheless, subsequent history is helpful to the Court's analysis because the Eighth Circuit Court of Appeals determined the plaintiff *lacked* Article III standing. 26 F.4th at 462–63. In a very similar factual pattern as here, the plaintiff was served a garnishment notice directly despite being represented by an attorney, and the Eighth Circuit Court of Appeals found that the plaintiff's allegations of intangible injuries were insufficient to establish concrete injury in fact to confer Article III standing over an FDCPA claim. *Id.* Thus, this line of cases supports the Court's reasoning here despite the representation to the contrary.[4]

---

[3] *See* Doc. 14 at PageID 51. Of the six cases cited, none are in Bluebook format and only two have reporter citations. The Court did its best to locate the presumed cases, none of which address the relevant issue of standing, with the exception of the Eight Circuit Court of Appeals case addressed above which supports the proposition that the Plaintiff lacks standing.

[4] The Court located the other cases presumably cited, which are: *Frias v. Patenaude & Felix, A.P.C.*, No. C20-0805-JCC, 2021 WL 1192421 (W.D. Wash. Mar. 30, 2021); *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1 (D. Mass Nov. 20, 2012); *Sylvester v. Merchants Credit Corp.*, C17-168 TSZ, 2019 WL 6728854 (W.D. Wash. Dec. 11, 2019); *Washington v. Portfolio Recovery Assocs., LLC*, 211 F.Supp.3d 1041 (N.D. Ill. 2016); *Washington v. Portfolio Recovery Assocs., LLC*, No. 14-cv-3854, 2017 WL 2958250 (N.D. Ill. July 11, 2017). None of these cases address standing.

As discussed, Sixth Circuit is more applicable and controlling than the authority offered by Plaintiff. Plaintiff alleges that he was exposed to the increased risk of two future harms by virtue of the Garnishment Notice being sent directly to him rather than his attorney: an increased risk of bankruptcy and an increased risk of job loss. But Plaintiff has not alleged any fact that those risks materialized sufficient to establish an injury that would confer Article III standing. Nor does Plaintiff allege any facts demonstrating that his perceived alleged future injuries are fairly traceable to the underlying alleged violative conduct by Defendants. As Plaintiff has failed to establish that he has standing, his Complaint must be dismissed.

## IV. CONCLUSION

Because Plaintiff lacks standing, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 10) and **DISMISSES** this action without prejudice.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge